GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
By:    THANE REHN
        Assistant United States Attorney
        One Saint Andrew's Plaza
        New York, New York 10007
        Tel. (212) 637-2354

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,

        Plaintiff,

        -v.-

THE PAINTING KNOWN AS
*A SCHOLAR SHARPENING HIS QUILL*,
BY THE ARTIST SALOMON KONINCK,

        Defendant in Rem.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**VERIFIED COMPLAINT FOR FORFEITURE**

18 Civ. ___ (___)

        Plaintiff United States of America, by its attorney Geoffrey S. Berman, United States Attorney for the Southern District of New York, for its verified complaint, alleges, upon information and belief, as follows:

### I. NATURE OF THE ACTION

        1.    This action is brought by the United States of America seeking the forfeiture of all right, title and interest in the painting known as *A Scholar Sharpening His Quill*, (aka *Vieillard taillant sa plume*) by the artist Salomon Koninck (the "Defendant in Rem Painting"), currently held in the custody of the Federal Bureau of Investigation ("FBI") in Queens, New York. An FBI agent took custody of the painting from an auction house

("Auction House-1") located in Manhattan, New York. A photograph of the Defendant in Rem Painting is attached hereto as Exhibit A.

2. The Defendant in Rem Painting is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) because there is probable cause to believe that the Defendant in Rem Painting is property, real or personal, which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 2314. The Defendant in Rem Painting is also subject to forfeiture pursuant to 19 U.S.C. § 1595a(c) because there is probable cause to believe that the Defendant in Rem Painting is stolen property introduced into the United States contrary to law.

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1345 and 1355.

4. Venue is proper pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts and omissions giving rise to the forfeiture occurred in the Southern District of New York, and pursuant to 28 U.S.C. §§ 1355(b)(1)(B) and 1395(b) because the Defendant in Rem Painting was found in the Southern District of New York.

## III. PROBABLE CAUSE FOR FORFEITURE

5. As set forth below, there is probable cause to believe that the Defendant in Rem Painting, the estimated worth of which exceeds $5,000, was looted in France in 1943 by agents of the National Socialist German Workers' Party (the "Nazis") from the children and heirs of renowned Jewish art collector Adolphe Schloss.

6. Adolphe Schloss was a prominent Jewish art collector in Paris whose large collection of Old Master paintings (the "Schloss Collection") was regarded as among the most

2

significant collections of Dutch and Flemish paintings assembled in 19th century France and which included paintings by Rubens, Rembrandt, and Ruysdael. Upon Schloss' death in 1910 the Schloss Collection was inherited by his wife and then, upon her death in 1938, by their four children (the "Schloss Heirs").

7. Included among the Schloss Collection was the Defendant in Rem Painting, *A Scholar Sharpening His Quill*, by the artist Salomon Koninck, an approximately 26-inch by 20-inch oil on panel painting, created in 1639 in Amsterdam, signed and dated "S Koninck 1639." Koninck was a Dutch painter and a contemporary of Rembrandt whose works are now held in the collections of many prominent museums, including the Louvre, the Prado, and the National Gallery of Art.

8. Upon the outbreak of World War II in 1939, the Schloss Heirs moved the Schloss Collection to Chateau de Chambon in Southern France, in an attempt to protect the collection from looting by the Nazis.

9. Immediately after German forces invaded France in 1940, the "Einsatzstab Reichsleiter Rosenberg" (the "ERR"), a Nazi agency, began seizing artworks and other cultural holdings of Jews residing in that part of France controlled by the Nazis.

10. Alfred Rosenberg, the Nazi Party's chief racial theorist, created the ERR to further the Third Reich's professed ideological objective to "study" Jewish life and culture as part of their propagandist mission against the Jews. Among other undertakings, the ERR, beginning in 1940, seized artworks and other cultural holdings of Jews and other so-called "enemies" of the Third Reich, particularly those who had fled the country to escape the Nazi

invasion. The ERR catalogued seized artworks prior to transporting them to other locations, typically places in Germany.   Because the ERR registered and identified the artworks they plundered, they left behind a record of the property they looted.

11. Due to its value and significance, the ERR made substantial efforts to locate and loot the Schloss Collection.   In 1943, the Schloss Collection was ultimately looted by the ERR from its holding place in Chateau de Chambon.   At that time, they arrested two of the four Schloss Heirs.

12. Two hundred sixty-two paintings from the Schloss Collection, including the Defendant In Rem Painting, were transported by the Nazis to a depot located at the Jeu de Paume, a prewar museum in Paris operated by the ERR.

13. In keeping with their protocol, the ERR registered and catalogued the Defendant In Rem Painting (the "ERR Catalogue Listing of the Defendant In Rem Painting"). In addition to recording that the Defendant In Rem Painting was part of the Schloss Collection, the name of the artist, the title of the painting, date of composition (1639), and dimensions (64 by 48 centimeters),[1] the ERR also photographed the Defendant In Rem Painting.   A copy of that photograph is attached as Exhibit B.   ERR records and photographs of art and cultural artifacts

---

[1] There is a difference between the dimensions of the painting as measured by Auction House-1, which measured the painting as 66.8 centimeters by 51.1 centimeters, and the dimensions recorded by the ERR and in other World War II and post-World War II era documents (*see infra*), which all list the painting as 64 centimeters by 48 centimeters.   Such minor deviation is not unusual when comparing descriptions of paintings from different historical eras.   Among other things, measurements performed while a painting is in a frame may differ from those taken when the painting is outside the frame.

looted by the Nazis are digitized and available in an online database (the "Database") created by The Conference on Jewish Material Claims Against Germany (also referred to as the Claims Conference), in conjunction with other organizations, and is readily accessible at https://www.errproject.org/jeudepaume/. The ERR Catalogue Listing of the Defendant In Rem Painting, as well as ERR catalogue listings of hundreds of other items from the Schloss Collection, is easily located online by accessing the Database.[2]

14. The Nazis transported at least 230 paintings from the Schloss Collection, including the Defendant In Rem Painting, from the Jeu de Paume to the "Führerbau," Hitler's headquarters in Munich.

15. In addition to the ERR Catalogue Listing of the Defendant In Rem Painting documenting the looting of the Defendant In Rem Painting by the Nazis, the theft is documented in multiple other sources as well:

    a. Nazi officials prepared two French gold-tooled, leather-bound albums to be presented to Hitler, which catalogued the artworks from the Schloss Collection

---

[2] The Database contains an error in the provenance of the Defendant in Rem Painting. Specifically, the Database lists a purported sale of the Defendant in Rem Painting through Galerie Charpentier in Paris on December 5, 1961. However, records reviewed by an Auction House-1 researcher indicate there was no Charpentier auction conducted on December 5, 1961. There was a Charpentier auction on December 5, 1951, but the catalogue for that auction does not list the Defendant in Rem Painting. Instead, the catalogue for the December 5, 1951 Charpentier auction lists and contains a photograph of a different Salomon Koninck painting, "*The Philosopher*," which had also been stolen from the Schloss collection. *The Philosopher* was restored to the heirs of Adolphe Schloss after World War II and sold in the 1951 Charpentier auction to the Prado Museum in Madrid, Spain. The Defendant in Rem Painting remained unaccounted for until it was transported from Chile to Auction House-1 and identified.

stolen by the Nazis. These albums were preserved and are now held by the National Archives. Included among these albums is a photograph of the Defendant In Rem Painting, which is at plate number 113. A copy of that photograph, provided to the Government by the Still Pictures Reference Team at the National Archives, is attached as Exhibit C.

      b.  The Defendant In Rem Painting appears in an inventory of "French Property Seized by the Germans" prepared by the United States Army, Allied Expeditionary Force dated February 15, 1945, under the header list "Collection of Adolphe Schloss." There, the Defendant In Rem Painting is identified by the name of the artist, title of the painting, and dimensions.

      c.  In a publication dated December 11, 1947, the French Commission for the Recovery of Art published volume two of a "List of property removed from France during the war 1939-1945" which inventoried "pictures, tapestries and sculptures" looted from France including the Defendant In Rem Painting. This publication was distributed worldwide to art dealers, professionals and museums and is intended to be used not only to locate and identify looted art but to also provide notice that the works included in it were stolen property. There, the Defendant In Rem Painting is identified by the name of the artist, title of the painting, dimensions, as coming from the "Collection Schloss," and includes a photograph of the Defendant In Rem Painting as well.

      d.  In 1998 the French Ministry of Foreign Affairs published a catalogue of unrecovered paintings from the Schloss Collection, which included the Defendant In Rem Painting as well as a photograph of it.

6

     e. The Bundesarchiv Koblenz (the German Federal Archives) maintains a list of artworks looted from the Schloss Collection, including the Defendant In Rem Painting.

     f. The book *The Lost Museum: The Nazi Conspiracy to Steal the World's Greatest Works of Art* by Hector Feliciano, includes a pre-World War II photograph of an interior of the Schloss family home in which the Defendant In Rem Painting is displayed.

  16. In or around November 2017, an art dealer based in Chile (the "Consignor") entered into an agreement with Auction House-1 to have Auction House-1 sell a work identified in the agreement as "A scholar in his study," by Salomon Koninck. Pursuant to the agreement, the Defendant In Rem Painting was transported from Chile to Auction House-1.

  17. When the Defendant In Rem Painting arrived in New York, Auction House-1 employees undertook an investigation into its provenance and determined, by accessing the sources referenced in paragraph 15 and by other means, that the Defendant In Rem Painting came from the Schloss Collection and had been looted by the Nazis during World War II. In particular, Auction House-1 employees observed that the painting sent to them by the Consignor—*i.e.* the Defendant In Rem Painting—was an identical match to the ERR Catalogue Listing of the Defendant In Rem Painting, including the photograph of it taken by the ERR. Auction House-1 then notified the FBI.

  18. By letter dated March 27, 2018, Auction House-1 informed the Consignor of its investigation into the Defendant In Rem Painting and its provenance. Accordingly, Auction House-1 informed the Consignor that it would withdraw the Defendant In Rem Painting

from sale and would maintain possession of the Defendant In Rem Painting until issues regarding ownership and restitution could be resolved.

19. Auction House-1 employees also photographed the Defendant In Rem Painting. A copy of one of those photographs is attached as Exhibit A.

20. Auction House-1 has determined that the estimated value of the Defendant In Rem Painting is well in excess of $5,000.

21. In response to being alerted by Auction House-1 that the Defendant in Rem Painting had been looted by the Nazis from the Schloss Heirs during World War II, the Consignor informed Auction House-1 that her father had purchased the Defendant In Rem Painting for 4.500 Deutsche Mark from Walter Andreas Hofer in Munich in 1952. In addition, the Consignor provided Auction House-1 with a copy of an invoice memorializing that sale.

22. Walter Andreas Hofer was Hermann Göring's chief purchasing agent and as such was a key player in the confiscation and looting of Jewish art collections during the Nazi era. In 1950, after being tried in absentia by a French military tribunal for his role in art plundering during World War II, Hofer was found guilty and sentenced to ten years in prison. Hofer was never apprehended by the French authorities, and reemerged in the early 1950s as an art dealer in Munich.

## IV. CLAIMS FOR FORFEITURE

**Forfeiture Under 18 U.S.C. § 981(a)(1)(C)**
**(Proceeds Traceable to a Violation of the National Stolen Property Act, 18 U.S.C. § 2314)**

23. Paragraphs 1 through 22 of this Complaint are repeated and re-alleged as if fully set forth herein.

24. 18 U.S.C. § 981(a)(1)(C) subjects to forfeiture "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense."

25. 18 U.S.C. § 1956(c)(7)(A) provides that the term "specified unlawful activity" includes "any act or activity constituting an offense listed in section 1961(1) of this title." Included among the enumerated offenses in 18 U.S.C. § 1961(1) is 18 U.S.C. §§ 2314.

26. 18 U.S.C. § 2314 provides that "[w]hoever transports, transmits, or transfers in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud" shall be subject to criminal penalties.

27. The Defendant in Rem Painting is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) because there is probable cause to believe that the Defendant in Rem Painting constitutes proceeds of an offense that is a specified unlawful activity, in that the Defendant in Rem Painting is property of the value of $5,000 or more that was stolen and was thereafter transported and transferred in interstate or foreign commerce.

**Forfeiture Under 19 U.S.C. § 1595a(c)**
**(Merchandise Imported into the United States Contrary to Law)**

28. Paragraphs 1 through 22 of this Complaint are repeated and re-alleged as if fully set forth herein.

29. 19 U.S.C. § 1595a(c) provides in pertinent part that "[m]erchandise which is introduced or attempted to be introduced into the United States contrary to law shall be treated as follows: (1) The merchandise shall be seized and forfeited if it – (A) is stolen, smuggled, or clandestinely imported or introduced. . . .

30. The Defendant in Rem Painting is subject to forfeiture pursuant to 19 U.S.C. § 1595a(c) because there is probable cause to believe that the Defendant in Rem Painting is stolen property introduced into the United States contrary to law, in that the Defendant in Rem Painting was stolen from its true owner and thereafter was introduced and attempted to be introduced into the United States by the Consignor.

WHEREFORE, plaintiff United States of America prays that process issue to enforce the forfeiture of the Defendant in Rem Painting and that all persons having an interest in the Defendant in Rem Painting be cited to appear and show cause why the forfeiture should not be decreed, and that this Court decree forfeiture of the Defendant in Rem Painting to the United States of America for disposition according to law, and that this Court grant plaintiff such further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: New York, New York
      October 19, 2018

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
Attorney for the Plaintiff
United States of America

By: *Thane Rehn*

THANE REHN
Assistant United States Attorney
One St. Andrew's Plaza
New York, New York 10007
Telephone: (212) 637-2354

11

## VERIFICATION

STATE OF NEW YORK )
COUNTY OF NEW YORK :
SOUTHERN DISTRICT OF NEW YORK )

CHRISTOPHER McKEOGH, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation (the "FBI"), and as such has responsibility for the within action; that he has read the foregoing complaint and knows the contents thereof, and that the same is true to the best of his knowledge, information, and belief.

The sources of deponent's information and the ground of his belief are official records and files of the FBI, information obtained directly by the deponent, and information obtained by other law enforcement officials, during an investigation of alleged violations of Title 18 and Title 19 of the United States Code.

_____
CHRISTOPHER McKEOGH
Special Agent
Federal Bureau Investigation

Sworn to before me this
18 day of October, 2018

_____
NOTARY PUBLIC

MICHAEL BIRLEY
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01BI4994280
Qualified in Suffolk County
Commission Expires March 30, 2022